**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

GABRIEL FERNANDO
DOMINGUEZ GALAVIZ,

*Petitioner*,

v. No. 2:26-cv-01826-SMD-JHR

WARDEN OF THE OTERO COUNTY
PROCESSING CENTER, *et al.*,

*Respondents*.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

THIS MATTER is before the Court on Petitioner's Petition for Writ of Habeas Corpus. The Court has reviewed the parties' submissions, the record, and the relevant law, and for the reasons set forth below, the Petition is GRANTED.

**BACKGROUND**

Petitioner, a citizen of Mexico, entered the United States without inspection in April 2001 as a minor with his parents. He has been living continuously in the United States since that time, residing in Texas with his wife and two daughters, all three of whom are U.S. citizens. On March 29, 2026, Petitioner was taken into custody by police on a charge of driving while intoxicated ("DWI"). On April 12, 2026, Petitioner was detained by immigration officials and remains detained at Otero County Processing Center in New Mexico. *See* Docs. 1, 7. Petitioner asserts that this ongoing detention violates the U.S. Constitution. Doc. 1 at 6.

The Form I-213 attached to Respondents' response lists DWI arrests on March 28, 2026, in Whitewright, Texas, and March 29, 2026, in Sherman, Texas. Doc. 7-1 at 4. Petitioner disputes

the March 28 entry, stating that he was never arrested in Whitewright and explaining that police mistakenly processed another person under his name, "realized their mistake," and then processed Petitioner, resulting in three DWI entries on the form. *See* Doc. 8. He acknowledges a June 16, 2006, conviction for DWI, which "was completed and was paid for on time," and an arrest for DWI on March 29, 2026. *See* Doc. 8.

**DISCUSSION**

This Court has jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A district court may grant a writ of habeas corpus to a petitioner who demonstrates that they are in "custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3).

I. <u>Statutory Framework: 8 U.S.C §§ 1225 and 1226</u>

Sections 1225 and 1226 govern the detention of noncitizens prior to a final order of removal. *See Jennings v. Rodriguez*, 583 U.S. 281, 287–89 (2018). Section 1225(b) "applies primarily to [noncitizens] seeking entry into the United States"—*i.e.*, "applicants for admission." *Id.* at 297. Detention pursuant to § 1225(b)(2)(A) is required "if the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted." Noncitizens detained pursuant to § 1225(b)(2) cannot be released on bond.

Section 1226(a) sets the "default rule" for detaining noncitizens "already present in the United States." *Jennings*, 583 U.S. at 303. Under § 1226(a), a noncitizen "may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." Noncitizens detained pursuant to § 1226(a) are therefore generally entitled to individualized bond hearings. *See id.* at 306.

Sections 1225(b)(2)(A) and 1226(a) are mutually exclusive in that both provisions cannot simultaneously govern Petitioner's detention. *E.g.*, *Romero v. Hyde*, 795 F. Supp. 3d 271, 286 (D. Mass. 2025); *see also Patel v. Crowley*, No. 25-cv-11180, 2025 WL 2996787, at *5 (N.D. Ill. Oct. 24, 2025); *Artiga v. Genalo*, No. 25-cv-5208, 2025 WL 2829434, at *4 (E.D.N.Y. Oct. 5, 2025).

The Tenth Circuit affirmed the Court's understanding of §§ 1225 and 1226 in *Santillan Quiroz v. Mullin*, 180 F. 4th 1226 (10th Cir. 2026). The court held that noncitizens "who entered the United States without admission and who have lived here since" cannot be subject to mandatory detention under § 1225. *Id.* at 1239. These individuals are "categorically unable to seek admission while they remain in the country." *Id.* "The Government's interpretation disrupts § 1226(a)'s coverage of inadmissible noncitizens. If the Government is correct that § 1225(b)(2)(A) mandates the detention of all applicants for admission, then there are no inadmissible noncitizens left for § 1226(a) to cover." *Id.* at 1247.

Because it is undisputed that Petitioner entered the United States over 25 years ago and was arrested in the interior of the country, § 1226 governs Petitioner's detention.

II. The Government's Ongoing Detention Violates Petitioner's Fifth Amendment Rights

The Court finds that ongoing detention violates Petitioner's Fifth Amendment rights. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *Garcia Domingo v. Castro*, 806 F. Supp. 1246, 1251–52 (D.N.M. Oct. 15, 2025) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

"Due process requires that, whenever the Government detains somebody, it must have a good reason for doing so. If the detention is civil and nonpunitive, like the immigration detention here, that reason must rise to the level of a 'strong special justification.'" *Santillan Quiroz*, 180 F.4th at 1249 (citation omitted).

The Government has offered neither a justification nor a formal process for the deprivation of Petitioner's protected liberty interest. Regarding Petitioner's criminal history, the Government's response states that "Petitioner was arrested for a third offense driving while intoxicated charge." *See* Doc. 7 at 1. Petitioner challenges this, stating that he has had two DWI incidents: the first resulted in a DWI conviction on or about June 16, 2006, which "was completed and was paid for on time," and the second an arrest on March 29, 2026. *See* Doc. 8. Petitioner disputes the March 28, 2026, arrest entry and states that he was arrested on March 29, 2026, and the other arrest on his record for March 28 was due to there being another individual with his name and officials "processed him thinking it was me," but realized the error on the day of his arrest, and that he has "never been arrested in Whitewright[,] Texas." *See id.*

A review of the Form I-213 attached to Respondents' response reveals discrepancies consistent with Petitioner's explanation. The Form I-213 indicates that Petitioner has a DWI arrest on June 16, 2006, a DWI arrest on March 28, 2026, with a charge for "3rd or more IAT," and a DWI arrest on March 29, 2026. Doc. 7-1 at 4. However, the arrest on March 28, 2026, was preceded by only the DWI arrest nearly 20 years earlier in June of 2006; thus, it is unclear how the March 28 arrest was the third qualifying DWI arrest, as the form lists only one earlier DWI arrest. Additionally, the form does not explain whether the March 28 and March 29 entries reflect separate arrests or the processing error Petitioner describes. However, it seems implausible that Petitioner was arrested on March 28, 2026, in Whitewright, Texas, was then immediately released, and then

re-arrested for DWI exactly one day later in Sherman, Texas. Further, the entry relating to the March 29 arrest does not indicate a "3rd or more IAT" modifier. *See id.* Respondents did not contest the Petitioner's assertions regarding these arrests.

Petitioner's time within the country following release creates a constitutionally protected interest that cannot be revoked without providing due process of law. His prior DWI conviction in June 2006 was over 20 years ago. Petitioner has been in immigration custody since April 12, 2026, following his arrest on a DWI charge. Importantly, Respondents do not advance any argument that Petitioner is a danger or flight risk if released. Indeed, Respondents maintain that Petitioner is an "applicant for admission" under § 1225(b)(2)(A), while acknowledging that this Court has reached the opposition conclusion and that the "Court's decision in *Martin Ramirez v. Noem*[, 829 F. Supp. 3d 949 (D.N.M. 2026)] would control the result here if the Court adheres to that decision." Doc. 7 at 2-3.

The United States' power to admit or exclude aliens is no longer plenary once an alien enters the country, because the Due Process Clause applies to "all persons." *See Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("Once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly."). Petitioner possesses a protected liberty interest in remaining free from detention and was deprived of that interest without constitutionally adequate process. *See Ramirez Garcia v. Warden, Cent. Valley Annex*, No. 1:26-cv-05117-EJD, 2026 WL 2766927, at *1 (E.D. Cal. Sept. 17, 2026) ("As Respondents only argue that Petitioner was detained pursuant to § 1225(b)(2), and have not argued that Petitioner was provided the process to which he was statutorily entitled to under § 1226(a), or that Petitioner may be a danger to the community or flight risk if released, his continued detention is unlawful.").

Because Respondents have offered no independent legal basis for continued custody, Petitioner is entitled to relief pursuant to § 2241. *See Ramirez v. Noem*, 829 F. Supp. 3d at 949; *Ramirez Garcia v. Warden*, 2026 WL 2766927, at *1 (finding unlawful petitioner's detention by immigration authorities after his arrest for driving under the influence, where respondents did not argue petitioner was a danger or flight risk if released, and granting release).

**CONCLUSION**

Accordingly, it is hereby **ORDERED**:

1) The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**;

2) Respondents **SHALL** release Petitioner within 48 hours of entry of this Order, without any additional conditions or restraints beyond those that existed before Petitioner's unlawful detainment;

3) Respondents **SHALL** provide Petitioner with all personal belongings, facilitate Petitioner's transportation from the detention facility, and provide all identity and travel documents required to allow return to Petitioner's primary address;

4) Respondents **SHALL** file a notice of compliance within two business days of Petitioner's release. This notice must specify: (1) the date, (2) the time, and (3) the manner of departure (e.g., transport to a bus station, designated drop-off location, or other arrangements). Additionally, the notice must include (4) a description or copies of all discharge and travel documents provided to Petitioner at the time of release;

5) Respondents **SHALL NOT** re-detain Petitioner without adequate notice and a pre-deprivation hearing before a neutral immigration judge, at which the Government must prove by clear and convincing evidence that Petitioner is a danger to the community or a flight risk;

6) The Court will separately enter Final Judgment in favor of Petitioner but retain jurisdiction over this matter to ensure compliance with this Order.

**IT IS SO ORDERED.**

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**